Oh yes, oh yes, oh yes, the Honorable Tom Clark, 5th District, State of Alabama, is now in session. Please be seated. Good morning. The first case call for oral argument is in re Guardianship of Wesenberg. Counsel, whenever you're ready, you may proceed. Good morning. Good morning. On behalf of Harold Stein, may it please the Court, by way of factual background, Harold Stein is the son of Elsa Wesenberg, the person in this guardianship. The other daughter that was involved was Linda Hewlett. The case started in February of 2016 whenever Elsa went to Attorney Schaffer's office along with her daughter Linda Hewlett and filed a petition to appoint a guardian for herself, at that time it was a guardian of the estate. Tom Malkovich was appointed the GAL, Linda Hewlett was appointed temporary guardian of the estate, and then throughout the case there was a citation and collection proceedings because prior to this guardianship money had been transferred from accounts owned by Elsa to my client, Harold Stein, or to my client and Elsa in joint tenancy. I believe the facts would be the impetus for this guardianship because Linda Hewlett testified that she became aware of this, brought this to the attention of her mother, said her mother didn't know anything about it, and that's what began this proceeding and what I think the record shows. Thereafter a number of motions and things took place with respect to the monies, but the primary issue on my appeal is the fact that Elsa Wesenberg was not afforded what I believe the statute provides for her protection as an adult disabled person. Ultimately what happened was that there was a hearing over two days, testimony received from a number of witnesses including Ms. Wesenberg, Mr. Stein, Linda Hewlett, that resulted in the judge having a lengthy documentary and later an order appointing Linda Hewlett as a guardian of the estate of Elsa Wesenberg. But during the pendency, when it began in February until the hearings in June, there was a second petition filed, and this time it was not filed by Elsa Wesenberg, it was filed just by Linda Hewlett for the guardian of the person. And there's a little bit of a distinction in my argument about the difference between Ms. Wesenberg bringing one on her own behalf and secondly one being brought by someone else for her. Ultimately the court entered a very lengthy order, but the underlying premise of guardianship is stated in my brief that basically the purpose of a guardianship is to promote the well-being of a disabled person, to protect him or her from neglect, exploitation, or abuse, and to encourage the development of his or her maximum self-reliance and independence. And part of my argument is that we as a society are becoming older, and these issues regarding guardianships are going to become more prevalent, and what is going to be the law and the procedure we follow in those regards, much of it is set forth in the statute, but how it's implemented is equally important. What I want to start out saying is that when you read the findings of the court and the testimony, it's apparent that Elsa Wesenberg has great affection for my client, very much enjoyed her time with my client, and did not want a guardianship at all. The fact that her testimony is in the record, and I cite to it in the record, and for the purpose of that, I'll read just a couple of spots from the record. This is in the record, C-205. It says, this is my client examining his mother. Hello, mother. This is in court. Hello, mother. Hello, son. On about February, your daughter Linda took you to Winters and Brewster's office for some reason, correct? Uh-huh, yes. Do you know what the reason was? Not really. I just signed something. You didn't know what you were signing? Shaking head. Do you know what? They just said sign your name on the dotted line. Do you know whether or not you have signed any other documents other than the petition for guardianship at Mr. Shaffer's office? I don't remember, but I did sign one thing, one that I remember. Now, the reason I bring that to your attention is in this case, basically the findings of the court is that she's forgetful and has some level of mild to moderate dementia. I submit to you that she doesn't remember what she signed that day, and she doesn't remember what was said. She could have said something that day, just like when she purportedly gave my client money sometime before. She doesn't remember giving my client money, whether she should or shouldn't have or whether there was some bad conduct on my client's behalf. It was an issue that did not get resolved completely in the trial court. Later on in that same examination, when Mother's being examined, she says, Mr. Stein asking his mother, would you like a third party to be your guardian? I don't want, question stranger, any of them to take care of me or run my life. If I feel I can do my own life, question right, do my own thing. Do you feel that some of your civil rights have been ignored? I'm being pushed to it. I was always free as a bird, but not anymore. I want to bring up that that's an issue that we're all going to have, not all of us, but many of us, as we face life, aging and our forgetfulness. At what point is our forgetfulness resulting in us losing pretty well all of our ability to have contributions into our own life, what we're going to be doing day to day and what have you. Because this was a plenary, these were plenary orders. These weren't fashioned to be limited in any way. They were told whenever the word plenary is used, it's generally everything, all decisions. I want to draw the court's attention to the petition to appoint guardianship that was filed. The original one is as guardian of the state. It is five pages long and very detailed. And I'm going to suggest that a reading of the record is going to suggest that if Ms. Weisenberg couldn't remember a lot of the other things that she said she couldn't remember, that she didn't remember the exact count numbers, the exact dollar amounts, the exact dates, all the things that are in this original petition that was prepared. The testimony from Mr. Schaefer was that he met with Ms. Weisenberg and he also met with Linda Hewlett. I submit that much of that information was not from Ms. Weisenberg. It was either from Ms. Hewlett or documents Ms. Hewlett brought because it doesn't seem consistent with what the court found in its findings. Counsel, wasn't part of the problem as far as once the court determined that plenary guardianship should be entered, the person in the estate, that your client had withdrawn some monies and failed to place the monies back into his mother's account until after the court had ruled? That's true. That's true. But there was a motion to reconsider that after that, because the court was asked, and the court may have picked up on the brief, the court was asked, well, Judge, if I give all that money back, will that have any effect on the court? And the court said yes. Now, it didn't get back until sometime after that set forth in the record, but by that time the judge went ahead and ruled on the issue. But the impetus of my argument is that part of us fashioning relief is to try to accommodate the disabled adult. Now that the money's back, is that an issue? Well, let's say there's some money that wasn't back. We have a guardian of a person and we have a guardian of the estate. The court could have easily fashioned some relief that would say, well, she wants to have Harold be her guardian of both, but I'm not going to do that because we have these money issues right now. And this matter was not heard on those money issues finally. It was set and then the appeal took place, so that got stopped. But I was involved in the trial court, Your Honor, so I can't say with certainty every single thing other than what I've read in the record. But if an important part of the case was the conflict that the court sites about the money, that was significantly removed, if not totally removed, by it. But there's other issues that I want to bring to the court's attention. First, this case seems to be deficient in what I think the normal requirements of the Act is. And one of the requirements of the Act is set forth in 755.511A, which talks about what do you do in connection with determining whether a person is disabled and employing a guardian ad litem. And in that statute, it says the guardian ad litem shall personally observe the respondent prior to the hearing and shall inform him or her orally in writing of the contents of the petition and his or her rights under section 11A11. And that is the section that's very long about your right to have a trial, your right to confront witnesses, all those kinds of things. It goes on to say the guardian ad litem shall also attempt to elicit the respondent's position concerning the adjudication of disability to proposed guardian, a proposed change in residential placement, changes in care that might result in the guardianship, and other areas of inquiry deemed appropriate. In this case, if you read the report filed by Mr. Malkovich, nothing in here is intended to in any way impinge on these men's credibility or whatever. I think they were just doing what they thought they were needing to do. And maybe they were. This court will determine if it was. But there is nothing in there asking her about whether she wants to have a guardian. Tom Malkovich says in his report, I asked her whether she wanted to have a guardian. He doesn't say. He does say in the report, I could use some help. But those have a distinction to me. In fact, the court in its final ruling says, but for these issues regarding the money, I could have brought a power of attorney to take care of these issues. And I'll read more about that. But basically, that didn't happen. There was a personal observation in the report. I don't want to submit that Mr. Malkovich didn't make me. But as I've practiced over the years, calling that lying to me is somewhat different than an attorney for the respondent. The attorney for the respondent is there to ask for a jury trial or to advocate. I don't need one or some other resolution. This can be had. In this case, that did not happen. Now, those notices to a respondent are not required if my client filed a pro se, not pro se, but a file on their own behalf. They're only required if someone else files for you. And plus in that is that you knew what you were doing when you did it. But in this case, we don't know if Ms. Washington knew what she was doing because she couldn't remember throughout the trial many things. In fact, when she met with Mr. Malkovich, she couldn't remember things. When she met with Mr. Schaefer, she couldn't remember things. And when she testified in court, she said she couldn't remember things. That's why I think these provisions of the act are so important. It goes on to say, and that's the GAO duties portion of the act, it goes on to say the court may appoint counsel to respond if the court finds the interest of the respondent will be best served by the appointment and shall appoint counsel on the respondent's request or if the respondent takes a position adverse to that of the guardian ad litem. Now, I don't know what position Ms. Rosenberg expressed to Mr. Malkovich, but I know that she testified in court that she didn't want what Mr. Malkovich was suggesting, a plenary guardianship. So, in that regard, in this case, it is my belief that she did not receive the proper admonishments and servant identities that wasn't according to the record. Now, I wasn't, again, I wasn't there, but the record in this case shows a notice of respondent's rights that was filed in the court, and a son was ever served, but there is no return filed in the record that shows that she ever was served with it. So, I don't, I have to assume that she was not served with the notice, although on the summons prepared by Mr. Booster, he had some of those admonishments on there. So, whether or not that is dispository, I don't know. I submit it's important because, in this case, Ms. Rosenberg's forgetful, so we need to work real hard to find out what she wants than maybe a person that's very adamant about their positions, and that's going to be anticipated, that people are going to be a little bit easier to push one way or the other. We're really trying to glean what they really want, what they desire, and then decide what's best for them given those desires. I'm not submitting to you the person shouldn't be protected because that's one of the requirements, but I do think that you should give every possibility to the person having their rights protected. We spend a lot of time in criminal court protecting the constitutional rights, and this is somewhat, maybe a little cheesy, but it's her liberty and her desire to go out with her son to shop on Sunday or have to do what somebody else tells her to do. So, that's an important part of my argument that she did not receive the admonishments, and the jail was forced to not include what they are required by statute to include. It also goes on to say that after the order of guardianship, on October 24th, in this case, the 2016 guardian ad litem filed a supplemental report basically saying that she was not able to identify the date, month, and year, and not name a grandchild. So, that goes on to say that her memory is failing. This is even after guardianship was started. And what the GAO said essentially in the reports and the record is, during my meeting with Ms. Weisenberg, she was pleasant and appeared to have a healthy physical appearance. She was able to communicate in a gentle manner. However, she was not able to provide much specific information. More importantly, she cannot remember as well as she previously was able to do so. Nevertheless, based on my observations, I believe her to be a pleasant woman who is physically sound. Unfortunately, I do not believe that she has the mental capabilities to handle personal business affairs, such as paying utility bills, insurance, and other related expenses. If that was the, then there's also in that report about some information about the money being withdrawn and she couldn't remember and so on and so forth. So, I don't want to diminish the fact that an issue in the case, ultimately, if Mr. Stein was going to be the guardian, was how do we deal with that issue. But I'm kind of arguing a little bit more. I'm arguing for my client, but he was arguing on behalf of his mother, having her freedom in his mind. You know, and he used those terms in his proceeding. The guardian-advised report was filed on April 1, 2016. It was much longer than what I just quoted you, but that was the general conclusion. Now, we get to Judge Goffnett's ruling after he heard all the evidence, and I think it's important because he's the one who made the findings that we have to accept unless they're improper, given the evidence. I'm not suggesting they were improper. I think the application of his findings was improper for the reasons that I've suggested. But it says, the file comes up for review. This is the docket entry. The file comes up for court testimony on 6-28-16. That argument, there appeared to be a likelihood for resolution. The court took the matter under advisory to attempt to resolve. No resolution was submitted, and the court now rules. The court finds, based on the testimony, that the evidence supports the entry of a plenary guardianship due to Elsa Wessenberg's misstatements, due to the month and year, in consideration of the medical report submitted, the court found Ms. Wessenberg to be otherwise alert in conversation with the court as concerned about her overall cognitive function. Having determined there are concerns about her overall cognitive function, the court notes that she only has some problems managing her affairs, but for her claim that she has had assets taken, the court would have allowed assistance to her through a power of attorney. The more troubling issue is who should be appointed. The ward was clear and persuasive. This is the ward, Ms. Wessenberg. The ward was clear and persuasive that her preference was to have Harold Stein to be her guardian. I submit that if that's her preference, if there's some way the court can fashion that and still protect her, that's what the court should have attempted to do. Now, is the court required to do that? I think based on the statute that that's what, because the statute says you're basically supposed to try to encourage independence. It goes on to say the court finds that Mr. Stein is qualified under the statute and specifically finds his part of family conviction should not disqualify him under the statute. I think the record was he had a cannabis conviction, but I don't want to mistake that. That's my recollection. The court notes Linda Hill's argument as to drugs, drug use and drinking, but equally notes the testimony as to her drug use and the DUI in the past 12 months. Neither is the perfect candidate. However, due to the allegations that certain funds delivered to Mr. Stein were not a gift, the court believes it would be a conflict for Mr. Stein to be guardian of her estate at this time. That issue remains to be unresolved. Otherwise, Mr. Stein would likely be named guardian. As such, the court appoints Linda Hill as plenary guardian of the estate of Nelson Weisenberg. The court appoints Linda Hill as plenary guardian of the person of Nelson Weisenberg. The court appoints Linda Hill as plenary guardian of the person of Ms. Weisenberg. This appointment is due to the pending gift issue. So the court is saying he finds that she wants Mr. Stein and he finds both of them to be less than the best, but Ms. Weisenberg is basically saying, I don't want anybody telling me what to do about everything. If she does talk about it, she can use some help. And it's interesting to note that that is consistent with what the court said in the record, page 159. It says, in speeding to her, the court stated, because it is clear to me that you love her and she absolutely worships you. Very close relationship between these people, which could play into the gift part, but that was not dealt with at the trial level. The ultimate hearing on whether she had a donative intent at the time. Now, the report, here's another omission in this trial report. 11A9 is the report that is required, and I'm talking about the physician's report or the report that's prepared in that, and the court's, all you judges know that there's a number of things that should be included in that report. First, a nature, a, the description of the nature and type of disability, assessment of how disability impacts on their ability to make decisions or function, an analysis and results of evaluation of response to mental and physical condition and where appropriate, educational condition. Three, an opinion as to what guardianship is needed, the type and scope of guardianship needed, and the reasons, therefore, for a recommendation as to the most suitable living arrangement, where appropriate treatment or habilitation for the respondent and for reasons, therefore. So all these things are required in the report that is supposed to be filed so that the court is aware of all these things that can fashion a relief that's appropriate. You know, if you have a broken leg, that means you need some help writing a check. But if you have mental problems, you may need help in bouncing your checkbook, but you may say, I don't like ice cream, and I want to buy ice cream. That doesn't require anything other than maybe some basic understanding of what you like or don't like. So basically, the report that was filed in this case was not uncommon from what I've seen in the past, but certainly I won't do it again. I mean, I won't file one again like this, but it's basically a handwritten note that says the following. I say handwritten, filled in form, but it's in handwriting. It basically, under the describing nature and type of disability, it says Alzheimer's dementia, mild to moderate, with difficulty making decisions. That is the problem that Ms. Weisenberg has, is she's easily swayed one way or the other. I think that's a reasonable inference to be drawn from what the court ruled. Two, provide analysis and results of evaluations, the mental, physical, and visual appropriate social skills performed. That's the second part of that. It says a patient has been treated for depression, anxiety, and dementia. She scored poorly on dementia testing. Three, state, local, and independent guardianship is needed, the type and scope of guardianship needed, and the reasons therefore. Thank you, Your Honor. Thank you, Your Honor. Counsel? Counsel? Excuse me. I want to thank J. Schaefer for the appellee, the police's counsel, and the court. I think there are really three things before us here today that control the cases barred before the court. First, the motion to reconsider that was briefed and argued and talked about was simply not well taken. The law is well settled in Illinois that a motion to reconsider is only appropriate under three circumstances, new law, new evidence, or a belief that the court misapplied the existing facts to the law. And none of those things were alleged. In reality, what we had in the motion to reconsider was Mr. Stein, the son, trying to enter into and entice the court into a negotiation. What if I give this money back? Now, he testified initially, as it set forth in the record, that his mother gave him the money. As you can tell, Ms. Westenberg had no idea because, and as counsel pointed out, her initial petition that she signed to have her daughter appointed guardian quoted her will and her partner's attorney, both of which she nominated her mother to be her guardian. And when I did the interview, I found the exact same thing as I testified to that the court did, that this was a very nice little old lady. She was very conversational, but she didn't know what was going on around her and certainly didn't know what was going on in her finances. In fact, if you look at the petition, we only allege that he took 50 grand. But when Southport turned him into the state for abuse of the elderly and we got all their documents that he wouldn't produce, it turned out he had taken 75. Nobody knew that until we got to digging in and doing the discovery. And the important thing is that while he wanted to enter into these negotiations with the court, what would the court do? And the court said, and I believe this was a mistake, Judge Goffin had done a fabulous job in this in creating a record that I think stands up and speaks for itself. But the one thing I took issue with was he was dangling the bait to try to get that money back for the estate. And he said, I would consider if you'd return the money. Now, the key is, one, that's a motion to reconsider. That's not appropriate to turn the judge's ruling around on a new act that takes place after the order's entered. But more importantly, he never gave the money back. Still to this day, he hasn't given the money back. And can't even explain, and we made a decision in Oklahoma. Is there some kind of a citation pending on that? There is, Your Honor. Actually, I was having a debate with counsel about that, about the loss of the trial court's jurisdiction when a matter goes up on appeal and the propriety of filing the quarterly reports with the appellate court if there's not even a file at the state court anymore. We were debating that very issue. But there are still some matters pending during the pendency of this appeal. That's correct. Counsel, what about Mr. Hanson? You know, I guess implied that, well, you know, the court could find that as far as the guardian of the estate with the money issues, perhaps, you know, the ruling was well taken. But as far as the guardianship of the person, the court could have fashioned a different remedy for his client since Baum preferred him, and so does, you know, the argument. Well, the court did fashion a remedy specifically for them, Your Honor. And as counsel said, he wasn't present during the whole thing. There were several, a whole list of attorneys during that time. He's fourth or fifth in line. There were plenty of times I wish I wasn't present during the underlying pendant during all this time. But the reality is that Mr. Stein testified that he was a felon. Now, the statute is crystal clear on that. We put the convictions into the record. You can only, in order to appoint him, you can only do so if there's a specific finding that appointing the felon is in the best interest of the ward. Now, that brings us to the underlying facts. This was not a static situation. The case clearly evolved over time. Her condition was worse, as I discussed in court, as I testified to. People with dementia and Alzheimer's are on a sliding board. It's not a static condition where it gets worse with time. And her condition was not the same as everybody that was involved knows. When there was a reason that we appointed Mr. Malkovich, that I asked the court to appoint Mr. Malkovich and not one of the people, there are plenty of guardians outlying him out there that would have done it cheaper and easier and faster, and some of the guardian outlying reports I get are a little more than a rubber stamp of the petition because they're going to charge you $500 and you're going to get your report. We wanted, in this case, a more experienced, broader-horizoned guardian. And Mr. Malkovich did interview or did do everything, reviewed the medical reports, and he testified there should be no visitation with Mr. Stein until there was a psych evaluation held. The state of Illinois social worker testified there should be no visitations of any kind with Mr. Stein until a psych evaluation was held. The judge disregarded that because Mrs. Stein wanted to see him. I said, Judge, given the history, as is in the record, that the first visitation with his nephew was to do the supervisor visitation. He showed up late, he showed up intoxicated, and he threatened to do away with us all. I felt the psych evaluation was appropriate before they lied. The judge disregarded that and mandated visitation unsupervised as part of his finance because that's what she wanted. Now, I think that you have to take with an enormous grain of salt the size of a mountain her testimony at the hearing because Mr. Stein's own daughter took the stand and testified that her biggest disappointment was that he was spending his time at visitation with his mother, and the thing that upset Elsie the most was that he was spending all his time coaching her on what to say when she testified. His own daughter testified that he was spending his time telling his mother what to say when she took the stand. And her testimony was different, but the reality between the time she came in and said, I don't know where my money is, I don't know how much I have, and we need to do something, and when the hearing was held, was that her condition had gone down. You know, death of a loved one causes a huge diminish in your capacity. Change in residence, huge diminish in your mental capacity. And that's one of the things I think the court took into account is because you have to realize where she lives and whether the order of the judge followed the statute's intent of providing the maximum freedom and stability that this lady had. Her situation is no different than it was before. She lives in her own house right next door to her daughter Linda, who is the person she had appointed in her will and powers of attorney to be her guardian when it was needed. She lives right next door to her grandson. So she has this close family community right there to provide care for. There's no question that change in her residence was not in her best interest. She didn't have the money. He had the money. And while he testified that she gave him that money and she wrote him a check and he put it in his account, once the bank started to respond to our subpoenas, we found that was not true. As you can see in the record and as we cite in our brief, he took her to the bank and took $76,000 out of the bank. He then put that in an account that he had his name on and her name. He then transferred $50,000 out, $60,000 out, $75,000 in, $40,000 out, $78,000 in. He was moving that money all over the place under his bed. He wouldn't even tell us where he had it a lot of the time. He had over $50,000 hidden somewhere. So when his attorney finally got it in his trust account, the math won't add up. Now, we made a conscious decision in open court not to chase the difference because you really want to spend $3,000 to find two. And so when he finally returned to his middle attorney, the $49,000 that was being held in their trust account, which the judge ultimately ordered deposited in an interest-free account, it's not the right amount of money, but it's not worth chasing the difference. Counsel, what about this argument that the GAL perhaps didn't give the proper admonishments to... Your Honor, two things. One, A, when you're your own petitioner, then the statute's different. But B, unequivocally, once Ms. Hewitt was appointed guardian, she came back in and said, all right, we've got to do something. My mother is getting so much worse. She's now wanted away from home and is lost. Nobody can find her. She turned up at the neighbor's house, who called and then gave her a ride and brought her back. She turned up in Johnson City hitchhiking. Nobody could tell anybody where she was going or where she was supposed to be. They took her to Derek when he called the police. So in the midst, like I said, it's not static. You know, she's on the sliding board. She can't explain. She couldn't explain where she was going, why she had left, what had happened. She didn't know either. And so there was a need for a guardian of the person. The already duly appointed guardian files a petition. You know, I've been nominated under the will. I've been nominated under the power of attorney. And so a new notice was served. Now, contrary to what Counsel said, and certainly not to his fault, because it scared me briefly too, somewhere along the line when they were making copies of the record, service of the notice was made on her personally, but it's on the reverse side of R-C-106. When they were making the copies in the record, they were making double-sided copies at some point in time and apparently single-sided at some point in time. And it took me a while to find it. But the return of service is on R-C-106, is the citation of the record, the return of service. But more importantly, not only will the notice of the rights of respondents serve, but the guardian ad litem meet with it. The statute on what has to be in that report doesn't say the guardian ad litem has to write the report. As he quoted from the doctor's report, the doctor answered the question. Now, did the doctor handwrite it? Yes. But do you really want to spend $1,500 or $1,000 to go get a doctor to do an in-depth analysis and write a three-page report of a person when they stipulated in open court that she needed a guardian? I mean, the reality is, as the record says, the very first time we came to court when it was only on this issue, Mr. Stein, through his attorney, said, we don't dispute that she needs a guardian. The court then addressed Mr. Stein, who, against his counsel's advice, said, I want to speak. He then says in his own words, yes, she needs a guardian. So that's the reason the court put it in this order. I'm fine taking judicial notice of the stipulation that she needs a guardian. That's why you can't come in and raise issues on appeal, and that brings me to my second thing. You can't raise these things on appeal for the first time. They were never raised before the trial court. The law is crystal clear on that in Illinois. You don't get to a new bite of the apple on a motion to reconsider and start off on a new negotiation, and you don't get to bring things up on appeal that were never brought up before the trial court. But having said that, the judge did. Judge Goffin-Edgar, again, I can't say. We're lucky to have him. He did a wonderful job, and when he put her, when he brought her forward, he stopped in his own self explaining all of her rights to her, complying with both the letter and the spirit of the law. He explained to her why she was there, why we were having a hearing, what we were doing, all on the record, that it was his job to make a decision whether or not she needed help. And if she did need help, who would be the person to help her? That's lines 3 through 5 on page 127. Then, you know, despite what we're here arguing about, she did it. She said it. Now, his own daughter took the stand and said, he's been telling her what to testify to, and she's easily persuadable. But she took the stand and said, if I have to have a guardian of my person, I would rather it be my son. Now, she had no option. She still was, that exact same day, said, well, I don't know what I've got in my hand. And she doesn't know whether, A or B, as to her economic situation. But what's our standard of review here? Abuse of discretion, Your Honor. And honestly, with the facts, when you have a person who is admittedly intoxicated, whether it's testimony that he threatened to kill the judge and all the lawyers, where he became intoxicated at the second visit, fell down, spread his head open,  I would put it to the court that it would have been an abuse of discretion to appoint a felon as the guardian of the person under those facts. No judge would have done it. And the parties have stipulated in open court that a need for a guardian, and the ward so clearly torn, but also so clearly in need of a guardian. There was no other alternative. I mean, Judge Goffin didn't have any choice of what he was going to do here. And, you know, perhaps I was in a unique position, but as soon as I identified, and I know if you do enough nursing home cases, you're going to take enough deposition of geriatric specialists and dementia specialists. As soon as I realized what was going on with this lady, we went overboard. There's a reason that petition is one-sentence paragraphs. There's a reason that petition is so simplified, because I wanted to be able to sit there with her and say five-word sentence, ten-word sentence, not give it to her in paragraphs and bites if she could understand, digest, and ask any questions. Because the sad truth was, when this started, all her that I could identify, you know, if you just stood here and had a conversation, hey, what did you watch on TV this morning? What do you make for breakfast? Those kind of things, no issue. What year is it? How many times were you married? Those kind of things, can't answer. And so as soon as I figured out what was going on, then I realized we're dealing, you know, the type of person we're dealing with, you know, she's got dementia, whether it's Alzheimer's, whether it's Parkinson's, or whether it's just generalized dementia, not that it has a huge impact. Things are going to get worse before they're going to get better, and we were careful with dealing with that all the way through. When you've got a state social worker, guardian ad litem, and myself, this lady was being looked after with more care. I wish that we could provide this service for everybody. Honestly, there are a lot of people that need this, and it doesn't work out, and it's not provided that way. If you've spent a lot of time in a courtroom, and you watch a case come in where somebody's been murdered at a stop sign, there's a big policy, there's bad injuries, it goes to trial, the plaintiff's unquestionably going to win, what happens? It seems like any borderline objection, every borderline exhibit, every borderline goes the other way, because the judge is trying to create a record on appeal that's going to stand up. Everybody in the room knows who's going to win. Everybody in the room knows what the verdict's going to be. So why create reversible error in a case where there's no reason for it? In my opinion, that's what Judge Galfinet was doing here, is he was bending over backwards every time, every continuance, every time a lawyer got out, every time they wouldn't produce the bank records, every time they wouldn't explain where the money was. It went Mr. Stein's way. And, you know, he did engage in perhaps a little more encouragement to return the money. That wasn't the judge's job to try and negotiate a return of the money. That day we were there to have a ruling and a motion to reconsider. Was it in Ms. Wessonberg's best interest? Probably, because I said, look, this isn't right that this lady has to keep paying. I'll waive all my fees if he gives the money back. But he wouldn't. And so the judge denied the motion. Was it in Ms. Wessonberg's best interest? Probably. And would it create a good record? Probably. But it was certainly not abuse of discretion not to appoint the felon who converted the funds guardian of the ward. Honestly, it's not a coin toss, because you can't appoint a felon guardian of the ward absent an express finding under the act that is in the best interest of the ward. And there's no question that what's in the best interest of this lady is living next door to her sister, who she nominated to be her guardian in both her will and her power of attorney years before, and her grandson on the other side, changing the residence. Every doctor would tell you it wouldn't be in her best interest. And so the judge did consider her rights, consider her testimony, and do what's in her best interest. It resulted in the minimum number of changes in her life, and it's working. Now we haven't had the issues. And the court took her wishes into consideration in crafting in specified visitation. You know, he takes her to the grocery store, she spends the night at his house. None of those things are a problem. And the fact that he didn't show up for the argument, that he was late for all the visitations, that he wouldn't return the money, it all came down to the money. Everything about this every single time was how do I figure out how to keep the money? And as he testified, repeatedly citing the record, by the end, he admitted that this wasn't a gift. He was safeguarding the money for his mother. His understanding and his mother's understanding of a payable on death CD were two different things, because that's what it was. She had put $50,000-some-odd in the certificate of deposit, payable on death, to Mr. Stein and his brother. Okay. And Mr. Stein's testimony was, well, she's given money to other family members in the past. She clearly intended to give that to me. That's why she put payable on death on the CD. So when I took her in there and took the money, that's just me advancing the cause. I was going to get it anyway when she died. Well, that's not how payable on death works. Somebody's got to die. And nobody did. But, you know, as he said in his testimony later, well, I felt more like I was safeguarding. The judge wasn't going to make that person the guardian of the person with the estate. We wasted a lot of money trying to track down this money and figure out how much it was. Nobody was more surprised than me to learn it was $76,000 and not $50,000. But we hadn't proven that the hard way. Thank you. Thank you. Thank you. As the court can see from the quarterly reports that Linda's filing, she's doing a good job. There's been no objections. There were at least two quarterly reports filed before this order was entered. There have been filed since. There have not been any objections. The money at issue was ultimately in Mr. Tetzlaff's trust account, where it was also earning zero interest just like it was when Mr. Stein had it. And we got it deposited. Thank you. Counsel? Excuse me. Thank you. All I have is a record to deal with. A lot of the things that are said by Mr. Schaefer, I don't know about. He said there was some off-the-weight fees. I don't know about that. The coaching, that testimony, look at the record. I don't see that there. What is in the record is right after the guardianship was appointed and Ms. Linda Hewlett wouldn't let my client come to the house, because she ran off twice within a short period of time. The inference that's being drawn by Mr. Schaefer is that it was something bad about us. The inference we say is that she was unhappy about her life situation. She was used to being with her son and having these visits, and she wasn't getting it. One of the things that is troubling to me is if my guy was so set on having this money, I mean it's not even really an issue in the case because it's an after-the-fact issue, why did he give it back? The representation counselor admitted that he had taken it wrong, but that's not in the record. The record basically says that the court, and in the court's findings, the court says I'm not ruling with regard to that issue in making my determination. The court separated those issues. I'll deal with that issue later. It was an issue that he thought was a conflict in my guy serving as a guardian, but I submit to you it would not have been a conflict for him to be a guardian of the person. It very well is a guardian issue for the estate. Some of the other things that were mentioned here is that who would have relevance on the money issue if they were relevant to this appeal? But quite frankly, other than the court saying that he had the conflict issue, whether that was ultimately a dorative intent or not has not been yet decided. The same things that counsel says about the mental condition of Ms. Elzenberg still remain. It's not in the record how she's been doing since because we've not been back to court. A lot of these things that are being argued I can't respond to because they're not in the record. But the money that was involved here was eventually on pay-on-death CDs, not all of it, but a goodly amount of it was pay-on-death CDs to my client and his brother, Mr. Stein. That no longer is the case. It's being held in separate accounts. Another fact that's justified in court is that Linda Hewlett had a house that was located on the same property she has that she sold to her mother, the disabled adult, some years ago, and it sits on Ms. Hewlett's ground. And that was part of the testimony about the money that's being given to the boys and so on and so forth. That only goes to the doer-to-the-intent on a later date. It does not go to the issue of whether or not she got the proper admonishments. Now, it was represented by counsel that at 106 of the record there are the notice of respondent's rights. I don't know what's on page 106. There was a filing of respondent's rights that was not filed in conjunction with the summons, and it was just filed in the case, and there was no proof. The proof of merit was not to Ms. Elzenberg, and there was nothing in the record that I looked at to prepare a mind that said that there was a return that wasn't copied. If that was filed by some supplement, I don't recall. Was it filed by supplement? I don't think so. I think it was on the back of the page. Well, the record didn't have the back of the page for me, so if it's there on your record, I'll stand corrected, but I don't believe it is. I wouldn't try to misrepresent that to the court. But that being said, in this report I was talking about states where an opinion of guardianship was needed. It says guardians may be advised due to difficulty with memory and decision-making. State of recommendation is the most suitable living arrangement and where appropriate treatment and habitation for respondent with family member. Certainly not. If you look at the statute and all the litany of things that are required to fashion the least intrusive alternative or to protect the independence of our citizens, that was not done. In this case, there could have been lots of things fashioned. Whether or not they were fashioned with Harold Stein or not is not the issue as much as whether or not it happened in the correct way according to our statutes and law in the state of Illinois. I also don't think it's relevant to my client having several prior attorneys. It doesn't change the facts and the findings of the court. If the court was swayed, as Mr. Schaefer would state, by the money that was found or not found and how much trouble was done, those are all in the record. The court ruled on various motions and what have you. Those were disposed of. But ultimately what happened in the face of trying to assure that his mother would have the guardian that she wanted or at least try to have it, he gave 49,000 at one time, 28,000 another time, another amount later. So for those reasons, we ask you to protect a citizen's rights to have an independent life and rule accordingly, Your Honors. Thank you. Thank you. We appreciate the briefs and arguments. Counsel will take the case under advisement.